MEMORANDUM

UNITED STATES of America, Plaintiff,

v.

Benjamin F. GIBBS, Individually and trading as Gibbs-Paving, a/k/a Ben Gibbs and Josephine Louise Gibbs, a/k/a Josephine L. Gibbs, a/k/a Josephine Gibbs, his wife, Defendants.

Misc. No. 6759.

United States District Court,
W. D. Pennsylvania.

June 14, 1977.

Alexander McNaugher, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Cyril T. Garvey, Sharon, Pa., for defendants.

ROSENBERG, District Judge.

The defendants, Benjamin F. Gibbs and Josephine L. Gibbs, in this case seek to stop an execution satisfying a judgment entered in favor of the plaintiff, the United States of America, on a loan issued by the Small Business Administration (SBA), on the basis that in effect the Administrator breached the contract at its inception.

On May 12, 1971, the SBA issued to the defendants a direct loan for $90,000 and authorized an immediate Participation Loan from the McDowell National Bank for $80,-000. The purpose of the loans were to aid the defendants in their paving business. At the direction of the SBA, the defendants prepared a list of accounts for which the money was to be used, including a prior SBA loan. The funds remaining were to be used by the defendants as operating capital. Both checks were endorsed over to the McDowell National Bank which made the appropriate disbursements. At the present, the defendants contend that such disbursements were contra to any agreement and the amount of working capital was not as expected. Mr. Gibbs did testify that he agreed to such proceedings only under protest to the parties present at the meeting for the closing of the loans.

In any event, the loans issued, the disbursements were made and subsequently the defendants defaulted on their obligations. Since the loans had been secured by real and personal property of the defendants, consisting of a mortgage on real estate, excluding the residence, and on all machinery and equipment, when the defendants did not peaceably comply with requests for their transfers, the plaintiff proceeded with execution on the SBA direct loan only on April 15, 1977, pursuant to judgment being entered on January 16, 1976, Miscellaneous No. 6395. The sale is scheduled for June 29, 1977.

**1044**

The defendant now seeks to stop the execution and to permit him to recoup certain funds on a judgment which he recovered in the Court of Common Pleas of Mercer County, Pennsylvania. In that Court the defendant brought an action against Delbert Forsberg, M & F Equipment Co., and Atlas Sand and Gravel, Inc., for damages because of an unlawful taking in a clandestine manner of a mixing plant which was then sold to John Tonkovich and Son, Inc., of Ohio.

He also asserts that he received the sum of $10,000 from the sale of a crusher, but the plaintiff instead of crediting his obligation with them referred the matter for credit on his obligation with the McDowell National Bank. He argues that if this $10,000 had been applied as he had requested and expected it would be, that the present execution would not have been effected. He also pleads with the court to delay the execution so that he might be able to procure the judgment amount from the above state court defendants after the litigation or a new trial and appeal are completed in the Pennsylvania Court.

The defendants argue for the most part that when they obtained the two loans in 1971, the arrangements were that they were to have between them both, the sum of $76,600 for operating costs and expenses, but that the plaintiff breached this contract by permitting the McDowell National Bank to pay certain accounts owed and allowed them only a sum of $1,709.57, and with this small amount they have been under a constant handicap and have been struggling ever since to keep the business going.

The execution is against the commercial property, exclusive of their home. Thus the defendants maintain that by reason of the activity of the plaintiff since 1971, and because of the inequitable disbursement authorized by the Administrator, they are entitled to a stay of execution in order that they might be able to extricate themselves from the predicament in which they have been placed.

The statute under which the execution was made is that contained in 15 U.S.C. § 631 et seq. which reads as follows:

"(b) In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may—

(1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy; *but no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or* his property;" (§ 634(b)(1) of Title 15 U.S.C.) (Emphasis Supplied).

The plaintiff contends that the stay of execution in this case would be included in the words "or other similar process", and that the statute forbids such action in this case. *Romeo v. United States,* 462 F.2d 1036, C.A. 5, 1972, cert. den. 410 U.S. 928, 93 S.Ct. 1361, 35 L.Ed.2d 589 (1972); *United States v. Mel's Lockers, Inc.,* 346 F.2d 168, C.A. 10, 1965. While this may generally be true, I am mindful of the many circumstances where such phraseology might not apply. *Dubrow v. Small Business Administration,* 345 F.Supp. 4 (D.C.Cal.1972).

As for example, we might assume that the Administrator of the SBA had wrongfully embezzled funds and paid it over to the debtor and thereafter the SBA issued execution upon a debt which did not exist, because of the failure to pay over the money. Realistically and equitably the agency could not recover and an annulment of any judgment entered thereon would be appropriate. Thus, in parallel comparison the averment by the defendant that the Administrator of the plaintiff deprived him of approximately $74,000 and left him only with $1,709.57 for operating expenses, would be a breach of the contract if any such had been made.

Equity might be applicable under the circumstance that the allocation of the $10,000 was wrongfully made by the Administrator of the SBA, when payment of that sum was made to the bank instead of applied to his

loan with the agency. The plaintiff argues, however, that since McDowell National Bank had first priority and both loans were behind, it would only apply the money to the bank's loan. The difficulty with the defendant's argument now at this late date is that the agreement by which the allocation of operating expenses was made and the date when the loan was made in May, 1971, is that the defendant should have acted immediately as of that time when he found his operating capital minimized and it would have been an appropriate time for him to protest and demand a correction. See, *United States v. Gaskins*, 232 F.Supp. 667 (D.C.N.C.1964), aff'd. 335 F.2d 835, C.A. 4, 1964.

 The alleged misapplication of the $10,000 occurred in 1974 and the appropriate time for the defendant to have acted was at that time and not the time when the execution process has begun. The delay occasioned by the defendant himself is such that would defeat equity if this was indeed an equitable matter, since we ought to apply the equitable principle that *Qui prior est tempore, potior est jure*, where there are equal equities, the first in order of time shall prevail.

Thus, by reason of the laches of the defendant, it is not necessary now that I provide an interpretation of the phraseology in the statute as contended by the defendant.

## ORDER OF COURT

AND NOW, TO–WIT, this 14th day of June 1977, for the reasons set forth in the foregoing Memorandum, the defendants' Motion For Relief From Judgment And For Stay Of Proceedings is hereby denied.